UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

In re:

        Scott Kerner,

                  Debtor.

Case No. 17-13514 (MG)

Chapter 7

**MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S MOTION
FOR APPROVAL OF STIPULATION TO REDUCE THE CLAIM OF URBAN
COMPASS AND DENYING DEBTOR'S MOTION TO EXPUNGE THE SAME CLAIM**

*A P P E A R A N C E S:*

Pick & Zabicki LLP
*Attorney for the Debtor*
369 Lexington Avenue, 12th Floor
New York, New York 10017
By:    Douglas J. Pick, Esq.

The Law Firm of Tese & Milner
*Attorney for the Chapter 7 Trustee*
735 Wickham Avenue
P.O. Box 35
Mattituck, New York 11952
By:    Angela G. Tese-Milner, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

        Pending before the Court is Angele G. Tese-Milner's ("Trustee") motion to approve a stipulation with Urban Compass, a creditor of the debtor's chapter 7 estate. ("9019 Motion," ECF Doc. # 162.) The stipulation reduces Urban Compass' claim from $57,540 to $40,000 and allows it in that amount. ("Stipulation," ECF Doc. # 167.) Scott Kerner ("Kerner" or "Debtor") moved to expunge Urban Compass' entire claim. ("Debtor's Motion," ECF Doc. # 149-1.) In effect, the Debtor's Motion amounts to an objection to the Stipulation. Urban Compass ("Compass") opposes the Debtor's Motion. ("Opposition," ECF Doc. # 157.) The Trustee filed

1

a statement concerning the Debtor's Motion. (ECF Doc. # 158.) The Debtor filed a response. (ECF Doc. # 160.) For the reasons explained below, the Court **GRANTS** the 9019 Motion and **DENIES** the Debtor's Motion.

## I.   BACKGROUND

Prior to filing his petition on December 7, 2017, Kerner retained Compass, a real estate brokerage firm, to sell his condominium unit (the "Condominium Unit"). (Opposition ¶ 2.) Kerner and Compass executed a brokerage agreement. ("Brokerage Agreement," ECF Doc. # 149-2, at 5–11.) The Brokerage Agreement (i) granted Compass an exclusive right to sell the Condominium Unit until February 22, 2018 (the "Term"); and (ii) provided that if the Condominium Unit was sold during the Term, Compass was entitled to a commission equal to 4% of the total sale price. (*See id.*)

During the Term, Compass introduced Jennifer Robinson-Khagan and Payam Khagan (collectively, the "Khagans") to Kerner as possible purchasers of the Condominium Unit. (Opposition ¶ 3.) On or about September 30, 2017, Kerner entered into a contract ("Khagan Contract," ECF Doc. # 157-1) to sell the Condominium Unit for $1,918,000 to the Khagans. (Opposition ¶ 3.) Compass agreed to reduce its commission to 3% of the total sale price only if the Condominium Unit was sold to the Khagans. (*Id.*) The Khagans satisfied the mortgage contingency in the Khagan Contract, and the closing of the sale of the Condominium Unit was scheduled for December 22, 2017. (*Id.*) The email scheduling the closing states, "To Julie [Newdow] and Mark [Landisman] [Compass Brokers]: Please send us your invoice as soon as possible." (*Id.*)

On December 7, 2017, Kerner filed a chapter 11 bankruptcy petition. The Debtor neither assumed nor rejected the Khagan Contract but instead filed a motion seeking authority to

2

conduct an auction sale of the Condominium Unit using the Khagan Contract as a stalking horse bid. ("Debtor's Motion to Approve Bidding Procedures in Connection with the Sale of the Condominium Unit," ECF Doc. # 18.) The Debtor falsely represented that the Khagans consented to the use of the Khagan Contract as a stalking horse bid. (*Id.* at 2.)

When the Khagans became aware of Debtor's attempt to auction the Condominium Unit and use the Khagan Contract as a stalking horse bid, the Khagans filed an objection to the proposed auction. ("Opposition to Auction Sale," ECF Doc. # 157-2.) The Khagans stated that they never consented to subject the Khagan Contract to higher or better bids at a bankruptcy auction. (Opposition to Auction Sale ¶ 4.) In addition, the Khagans demanded the termination of the Khagan Contract and the return of their $191,800 down payment because the Debtor breached the Khagan Contract by failing to close the sale of the Condominium Unit by December 22, 2017. (*Id.* ¶¶ 4–6.) The Court sustained the Khagans' objection and determined that: (i) the Debtor had no right to use the Khagan Contract as a stalking horse bid without Khagans' consent; (ii) the Debtor breached the Khagan Contract by failing to close on December 22, 2017; and (iii) the Debtor was to return the $191,800 down payment to the Khagans. (*See* "February 6, 2018 Order," ECF Doc. # 43.) The February 6, 2018 Order terminated the Khagan Contract. (*Id.*)

On March 2, 2018, the Debtor filed a motion to dismiss his bankruptcy case. ("Debtor's Motion to Dismiss," ECF Doc. # 54.) On March 8, 2018, Compass filed a motion to convert the Debtor's chapter 11 case to a case under chapter 7. ("Compass' Motion to Convert," ECF Doc. # 58.) On March 28, 2018, the Court granted Compass' motion and the Debtor's chapter 11 case was converted to case under chapter 7. (*See* "March 28, 2018 Order," ECF Doc. # 63.)

Compass filed its claim for brokerage commission in the amount of $83,960. Because Compass agreed to reduce its commission to 3% of the sale price, the actual amount of Compass' claim is $57,540 ("Claim"). The Trustee's negotiation with Compass resulted in the Stipulation whereby Compass agreed to further reduce the Claim from $57,540 to $40,000. (*See* Stipulation.)

## II.     LEGAL STANDARD

Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996). Under Bankruptcy Rule 9019, the court has the authority to "approve a compromise or settlement." FED. R. BANKR. P. 9019(a). A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement. *In re Drexel Burnham Lambert Grp., Inc.,* 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968)); *see also Topwater Exclusive Fund III, LLC v. Sage Crest II, LLC (In re Sage Crest II),* Nos. 3:10cv978 (SRU), 3:10cv979 (SRU), 2011 WL 134893, at *8–9 (D. Conn. Jan. 14, 2011); *Cousins v. Pereira (In re Cousins),* No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010); *In re Chemtura Corp.,* 439 B.R. 561, 593–94 (Bankr. S.D.N.Y. 2010); *In re Lehman Bros. Holdings,* 435 B.R. 122, 134 (S.D.N.Y. 2010).

A court's responsibility is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Chemtura,* 439 B.R. at 594 (quoting *In re W.T. Grant, Co.,* 699 F.2d 599, 608 (2d Cir.1983)). However, the court is not required to conduct a trial on the terms to approve a settlement. *Id.* Before making a determination, however, the court must inform itself of "all facts necessary for an intelligent and objective

opinion of the probabilities of ultimate success should the claim be litigated." *O'Connell v. Packles (In re Hilsen),* 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (quoting *TMT Trailer Ferry,* 390 U.S. at 424).  In addition, courts may give weight to the opinion of bankruptcy counsel supporting the settlement.  *Id.* ("In [approving the settlement agreement], the court is permitted to rely upon 'opinions of the trustee, the parties, and their attorneys.'"); *Chemtura,* 439 B.R. at 594.

Courts have developed standards to evaluate if a settlement is fair and equitable and identified factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry, Inc.,* 390 U.S. 414 (1968).  The Second Circuit outlined the test for consideration of settlements under the Bankruptcy Rules in *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.3d 452, 462 (2d Cir. 2007).  The factors to be considered are interrelated and require the court to evaluate:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;" (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors;" and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Id.* (internal citations omitted).

The burden is on the settlement proponent to persuade the court that the settlement is in the best interests of the estate.  *See* 8 NORTON BANKRUPTCY LAW AND PRACTICE 3D § 167:2 (3d ed. 2011).

5

### III.  DISCUSSION

**A.  Business Judgment Standard Applies to the Trustee's Action**

The Court may consider the informed judgments of the Trustee and Trustee's counsel.  In *In re Drexel Burnham Lambert Group, Inc.*, the court observed:

> Further, the court need not conduct a wholly independent investigation in formulating its opinion as to the reasonableness of a settlement.  We may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable, *see*, *In re Carla Leather. Inc.*, 44 B.R. 457 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985), and consider the competency and experience of counsel who support the compromise.  *See*, *In re Texaco*, 84 B.R. 893 (Bankr. S.D.N.Y 1988); *In re International Distribution Centers. Inc.*, 103 B.R. 420 (S.D.N.Y. 1989).  And indeed, a court may approve a settlement even if it believes that the trustee or debtor-in-possession ultimately would be successful at trial.  *ln re Teltronics Services, Inc.,* 46 B.R. 426 (E.D.N.Y 1984), *aff'd,* 762 F.2d 185 (2d Cir. 1985).  Finally, we must consider the principle that "the law favors compromise."  *In re Blair*, *supra,* 538 F.2d at 851.

134 B.R. at 505.

The Debtor takes issue with the Stipulation, essentially arguing that Compass' claim can be further reduced.  However, the law provides the Trustee with "a substantial degree of prosecutorial discretion" when determining whether to bring a cause of action or not.  *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y. 1988); *In re Consol. Indus. Corp.,* 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) ("A bankruptcy trustee is not required to prosecute every cause of action belonging to the bankruptcy estate.  Instead, the trustee is given a substantial degree of discretion in deciding how best to administer the estate committed to his care and his actions are measured by a business judgment standard." (internal citations omitted)).  Moreover, courts "will not entertain objections to the trustee's management of the debtor's estate where the trustee's conduct involves [her] good faith business judgment, is made on a reasonable

6

basis, and is within the scope of the trustee's authority under the Code." *In re Belmonte,* 524 B.R. 17, 29 (Bankr. E.D.N.Y. 2015) (quoting *In re Taub,* 441 B.R. 211, 216 (Bankr. E.D.N.Y. 2010)). Here, the Debtor's Motion amounts to an objection to the Trustee's management of the estate. Because the Trustee enjoys a substantial degree of discretion and her negotiation with Compass resulted in a reduction of the Claim, the Court has little reason to second-guess the Trustee's good faith business judgment that the Stipulation is reasonable.

### B. Settlements are Favored in Bankruptcy

The Stipulation clearly falls within the range of reasonableness detailed in *Iridium*. First, the Stipulation provides immediate benefits to the estate as it reduces the Claim and allows the Trustee to expeditiously complete her administration of the estate. On the other hand, as explained below, the Claim is strongly supported by case law. Thus, litigation is unlikely to bring a net benefit to the estate. Second, continued litigation would undoubtedly incur additional administrative expense and reduce distributions to the two remaining general unsecured creditors. Moreover, continued litigation would diminish any surplus that the Debtor may have. Third, at the final stage of a chapter 7 case, the Stipulation promotes the paramount interests of the creditors in receiving prompt distributions from the estate without incurring further litigation expenses that would diminish the estate. Fourth, major constituencies, such as the Trustee and Compass, support the Stipulation. Lastly, the Court has no reason to doubt that the Stipulation resulted from arm's length negotiation between the Trustee and Compass. Hence, the Court concludes that the Stipulation is fair and equitable and in the best interest of the estate.

### C. The Debtor Has Standing but His Motion Lacks Merit

The Debtor likely has standing to challenge Compass' claim. Section 502(a) provides that "a claim or interest, proof of which is filed under section 501 of this title . . . is deemed allowed, unless a party in interest . . . objects." The Bankruptcy Code does not define the term

"party in interest." In the Second Circuit, a chapter 7 debtor becomes a party in interest with standing to object to a claim "*only* if there could be a surplus after all creditors' claims are paid." *In re Magnesium Corp. of Am.*, 583 B.R. 637 (Bankr. S.D.N.Y. 2018) (emphasis in original) (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000)). *See e.g.,* 5 COLLIER ON BANKRUPTCY ¶ 502.02[2][c] ("In a chapter 7 case . . . the debtor usually has no pecuniary interest that would justify objecting to a claim unless there could be a surplus after all claims are paid."); *In re Roussopoulos*, 198 B.R. 33, 44 n.9 (Bankr. E.D.N.Y. 1996) ("[A]n insolvent Chapter 7 debtor lacks standing to challenge a proposed sale of estate property because he lacks a pecuniary interest in such property.").

The Debtor's estate now has $274,535.19 on hand after satisfying the secured claims of Wells Fargo and Investors Bank in the combined amount of $1,740,975.53 with the proceeds from the 363 sale of the Condominium Unit. ("Fee Application," ECF Doc. # 153, at 1–2.) Administrative expenses include (i) $39,119.50 in professional fees and expenses of the Trustee; (ii) $99,475 in professional fees of the auctioneer; (iii) $975 in fees owed to the Office of the United States Trustee; and (iv) $27,113.57 in professional fees of Pick & Zabicki as Debtor's chapter 11 counsel. Administrative expenses total $166,683.07. After deducting administrative expenses from the cash on hand, the estate has $107,852.12 available for distribution to unsecured creditors. A surplus would exist even if the Compass' $57,540 Claim was paid in full; there would be a surplus of $25,153.76 after satisfying the only remaining unsecured claim filed by 515 East 72nd Condominium in the amount of $25,158.36. Therefore, the Court concludes that the Debtor is a party in interest with standing to challenge the Claim.

A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. *See* FED. R. BANKR. P. 3001(f). The burden then

8

shifts to the claimant if the objector produces "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). When the burden shifts back to the claimant, he must prove by a preponderance of the evidence that under applicable law the claim should be allowed. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000); *In re Holm*, 931 F.2d at 623; *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

Here, Compass has produced the Brokerage Agreement as the *prima facie* evidence of its claim. The Debtor, as the objector to the Claim, bears the initial burden of persuasion. The Debtor fails to sustain this burden. The Debtor argues that Compass is not entitled to any commission because it was not the procuring cause of the 363 sale and the transaction with the Khagans never closed. (Debtor's Motion ¶ 9.) This argument is unpersuasive:

> [i]t is a well-settled rule in this State that in the absence of an agreement to the contrary, a real estate broker will be deemed to have earned his commission when he produces a buyer who is ready, willing and able to purchase at the terms set by the seller.

*Lane–The Real Estate Department Store, Inc. v. Lawlet Corp.*, 28 N.Y. 2d 36, 42 (1974); *see also Stolen v. Bruaz Realty Corp. et al.*, 173 A.D.2d 927, 929 (3rd. Dept. 1991). Here, as reflected in the Khagan Contract, Compass produced the Khagans—a buyer who was ready, willing and able to purchase the property on the terms set in the Khagan Contract. "The broker's ultimate right to compensation has never been held to be dependent upon the performance of the realty contract or the receipt by the seller of the selling price unless the brokerage agreement with the vendor specifically so conditioned payment." *Lawlet Corp.*, 28 N.Y. 2d at 42. Here, the Brokerage Agreement states that Compass is entitled to be paid commission when the property is sold and that the commission is due and payable at closing.

9

> If the Premises is sold during the Term, whether to a purchaser or to the Board that has exercised its right of first refusal during the Term or afterward (such purchaser or the Board, as applicable, the "Buyer"), you shall pay Broker a commission of four percent (4.00%) of the total sale price of the Premises. In the event that another licensed real estate broker is involved in this transaction on behalf of the Buyer, Broker shall split the commission with such cooperating broker pursuant to a separate agreement and in no event shall the commission paid by you exceed the amount set forth above. Any commission shall be due and payable at closing.

(Brokerage Agreement ¶ 6.)

The point here is not that Compass' victory would be certain if it chose to litigate for its right to a full commission, but rather that its legal arguments are strong, which the Trustee and Compass no doubt considered in the negotiation leading to the Stipulation to allow a brokerage commission in a reduced amount. Compass' argument is that its right to its commission accrued at the time the Khagan Contract was executed, with the commission then due and payable at the closing of the sale. Importantly, the Brokerage Agreement does not include any language conditioning Compass' commission on the consummation of the sale to the Khagans. Thus, Compass may well have been entitled to its commission. *See Bank of New York Mellon Trust Company, N.A. v. Morgan Stanley Mortgage Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016); *Stonehill Capital, et al. v. Bank of the West*, 28 N.Y.3d 439, 452 (2016).

Moreover, even if the Brokerage Agreement had provided that Compass would only be entitled to its commission if the sale of the Condominium Unit to the Khagans closed (which it does not), Compass could and did argue that it would be entitled to its full commission. Where the seller and the broker expressly provide that a broker has no right to a commission unless a condition is fulfilled (*i.e.* closing), and the condition is not performed, the seller will nevertheless be liable for the brokerage commission if the seller was responsible for the failure to perform the condition. *See Lawlet Corp.*, 28 N.Y. 2d at 43 (1974); *Levy v. Lacey*, 22 N.Y.2d 271, 279

10

(1968). Here, Kerner, as the seller, was responsible for not closing the sale of the Condominium Unit by December 22, 2017.

## IV. CONCLUSION

Because the Trustee exercised her business judgment in entering the Stipulation with Compass and the Debtor failed to sustain the burden of proof in his motion to expunge the Claim, the Court **GRANTS** the Trustee's 9019 Motion and **DENIES** the Debtor's Motion.

**IT IS SO ORDERED.**

Dated: May 10, 2019
       New York, New York

                                  ___*Martin Glenn*___
                                   MARTIN GLENN
                               United States Bankruptcy Judge